UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| CYNTHIA RICHARDSON, | ) | Civil Action No.: 4:05-2086-TLW-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| | ) | |
| HORRY COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## I.    INTRODUCTION

This is an employment discrimination case.  Plaintiff alleges causes of action for race discrimination, retaliation, and hostile work environment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.  Presently before the Court is Defendant's Motion for Summary Judgment (Document # 36).  A hearing was held on January 4, 2008.  All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC.  Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

## II.    FACTUAL HISTORY

### A.    Plaintiff's Position and Supervisors

Plaintiff, a black female, is employed by Defendant Horry County as an Administrative Assistant in the Engineering Department.  Plaintiff Aff. at ¶¶ 2-3.  She has been employed with Defendant since May 22, 2000, and has a pay grade of 12A.  The Director of the Engineering Department throughout Plaintiff's employment has been Steven Gosnell.  Gosnell's assistant for the

past fourteen years has been Sandee Garigen. During her first two years of employment, Plaintiff's direct supervisors were either Garigen or Vivian Barnhill or both. Garigen has had either direct or supervisory authority of Plaintiff throughout her employment. In August 2002, Barnhill was transferred to the Tax Assessor's Office and had no further responsibilities with the Engineering Department. Vivian Gosnell Dep. at 8-9, 12-13. In 2005, Vivian Barnhill and Steven Gosnell married.

**B.    Plaintiff's Oral and Written Warnings**

Throughout her seven years of employment with Defendant, Plaintiff has received six written or oral warnings. Plaintiff Dep. at 54-55. On January 11, 2001, Garigen discussed an oral warning with Plaintiff regarding too many personal phone calls. Ex. 1 to Defendant's Motion.

On November 30, 2001, Plaintiff received a written warning concerning her failure to follow Defendant's time clock policy. Ex. 2 to Defendant's Motion. A copy of the warning was placed in Plaintiff's file. Id. Plaintiff admitted in her deposition that her violation caused problems for Vivian Barnhill because it created additional paperwork for her to have to complete. Plaintiff Dep. at 29. Plaintiff also noted that two other employees received involuntary days off for similar violations. Id.

In May of 2002, Plaintiff received a warning for "inefficiency or lack of application in performance of duties." Plaintiff Aff. at ¶ 6. A coworker of Plaintiff's, David Helms, asked Plaintiff to assist him in stuffing thirty-three envelopes for mailing. Id.; Ex. 3 to Defendant's Motion. Plaintiff stuffed the documents in the envelopes without addressing the envelopes. Ex. 3 to Defendant's Motion. According to the warning, written by Garigen, Plaintiff "did not address any of the envelopes even though she knew the department was under time constraints to complete the

project and mail the envelopes that day." Id.  Apparently, the documents should have been stuffed in window envelopes, but were not.  Id.  The envelopes were delivered to the mail department without the addresses and were run through the postage meter before anyone noticed the absence of the addresses.  Id.  According to the warning, "this inattention to detail caused the Engineering Department, Mail Department, and Administrator's office to all utilize valuable work time to remedy an action that could have certainly been prevented with simple follow-up procedures on [Plaintiff's] part."  Id.

Plaintiff prepared a written rebuttal to the warning given by Garigen, in which she stated that she did not know there was a time constraint when her co-worker, Helms, asked for her help, the "mailroom guy" arrived an hour earlier than expected, she paged Helms and Renee Defalco to help her stuff the envelopes, and no one noticed that the envelopes they were using were not window envelopes.  Id.  She further asserted that she does not keep window envelopes at her desk and was not provided with the window envelopes as she usually is when her assistance is requested by another co-worker.  Id.

Both Helms and Defalco are white co-workers of Plaintiff.  Plaintiff Aff. at ¶ 6.  Neither one was "written up" for their participation in the incident, although, according to Plaintiff, Defalco was also supervised by Garigen.[1]  Id.

On September 10, 2003, Plaintiff received a written reprimand for "lack of enthusiasm and positive attitude while communicating with others during use of the telephone, expressing a negative tone of voice."  Ex. 4 to Defendant's Motion.  According to the document, issued by Garigen and

---

[1]Defendant claims there is no evidence in the record that either Helms or Defalco was supervised by Garigen.  Defendant's Memorandum at 4.

Debbie Bailey, a written reprimand was issued because "previous discussions have taken place regarding the importance of good quality customer service, internally and externally." Id. The document also noted that "violation within 30 days will result in one (1) day suspension without pay." Id. In a document attached to the written reprimand, Debbie Bailey added that "there have been several complaints from personnel of other departments and the public that [Plaintiff] has answered the phone with a tone lacking of enthusiasm and the positive attitude on several occasions within the past few days." Id.

In response to the reprimand, Plaintiff wrote, "would like to be transferred out of Infrastructure and Regulation Division. When I was hired I never gave the persona of being giddy when answering the phone. I always handled everything regarding my work professionally. Request immediate consideration." Id.

Steven Gosnell prepared a memorandum to Plaintiff regarding the written reprimand and her request for a transfer. Id. Gosnell noted that he fully supported the written reprimand as it was not the first time Plaintiff had been counseled on the matter. Id. He also denied her request for a transfer out of the Infrastructure and Regulation Division, noting that she was "filling an important position within the Engineering Department." Id. He asked that Plaintiff make customer service a priority in her daily tasks. Id.

In her deposition Plaintiff stated that she thought the written reprimand was a joke because she had never been counseled prior to it. Plaintiff's Dep. at 56. However, both Debbie Bailey and Steve Gosnell noted that she had been counseled on the matter before. Ex. 4 to Defendant's Motion. In addition, in her second quarter Performance Evaluation for 2003, received by Plaintiff on April 24, 2003, it is noted that "there have been several complaints regarding your tone when answering

-4-

the phone. Please refrain from negative tones, put a smile in your voice." Ex. 5 to Defendant's Motion.

On May 27, 2004, Plaintiff received another written warning from Garigen. Ex. 9 to Defendant's Motion. Garigen wrote, "[Plaintiff] was arguing with fellow employee in the file room. Her voice was raised in such a fashion that I could hear her in my office which is quite a distance away. The possibility of her voice being heard in the lobby is unacceptable." Id. Plaintiff maintained that she was not arguing with her fellow employee and she did not realize her voice was loud enough to be heard in the lobby. Id. She noted, "voices normally carry from the back offices by various employees and they are not disciplined in no way. I do think this is unfair and I'm being pointed out since others are in the practice of doing the same." Id.

Tracie Cooper, the white co-worker with whom Plaintiff was accused of arguing, submitted a written statement on May 28, 2004, supporting Plaintiff's position that no argument took place. Ex. 8 to Plaintiff's Response. Renee Defalco, another co-worker, also submitted a written statement on May 28, 2004, that she "did not hear [Plaintiff] from my office of the Public Works building on 26 May 2004 regarding the [Plaintiff] and Tracie incident in the file room." Ex. 9 to Plaintiff's Response. During her deposition, Garigen admitted that she was aware of these two statements, but felt comfortable issuing the reprimand to Plaintiff because she had witnessed the incident. Tracie Cooper was not written up for the incident. Plaintiff Aff. at ¶ 7.

Plaintiff's last written warning was on May 15, 2006, arising out of a time clock violation for clocking out another employee. Ex. 10 to Defendant's Motion.

### C.     Plaintiff's Performance Evaluations

Despite the above warnings received by Plaintiff, she never received a performance evaluation rating of "below expectations" or lower. Defendant rates its employees on a scale of 1 to five, with 1 indicating "substantially below expectations" and 5 indicating "substantially exceeds expectations." A rating of 3 represents "meets expectations" and a rating of 4 represents "exceeds expectations." Plaintiff's annual evaluation conducted on November 16, 2001, resulted in an overall rating of 3.9. Ex. 12 to Defendant's Motion. Plaintiff received a rating of 4 on her annual evaluation conducted on October 29, 2002. Ex. 13 to Defendant's Motion. She received an overall rating of 3.49 on her October 21, 2003, evaluation. Ex. 8 to Defendant's Motion. In that evaluation, Garigen noted, "you have expressed some difficulty this period with maintaining a positive, quality customer service that impacts your attitude. As you have been reminded, your position requires a positive attitude necessary at all times. Improvements are within your character." Id.

Plaintiff also received quarterly evaluations. In the quarterly evaluation dated January 31, 2003, Garigen asked Plaintiff to limit personal calls and limit visiting sessions with fellow employees. Ex. 6 to Defendant's Motion. In the quarterly evaluation dated April 24, 2003, Garigen noted that the number of personal calls had reduced dramatically but that the department had received several complaints regarding Plaintiff's tone of voice when answering the phone. Ex. 5 to Defendant's Motion. In Plaintiff's next quarterly evaluation, Garigen noted that "your telephone voice and attitude has improved since the last quarter. Continued efforts and awareness of absence of your work area is appreciated, as well as controlling disruptive behavior in the front area." Ex. 7 to Defendant's Motion.

### D.     Plaintiff's May 2003 Job Application

In May of 2003, Plaintiff submitted an application for an Administrative Assistant position in the Public Works Department.  Plaintiff Aff. at ¶ 10.  Bill Shannon is the Director of Public Works.  Shannon reports directly to Steven Gosnell.  In August of 2002, Shannon's Administrative Assistant retired.  The position was not immediately filled.  The position was eventually approved for a job vacancy advertisement on or about May 1, 2003.  Ex. 14 to Defendant's Motion.  The position was advertised both internally and externally at a pay grade of 12A.  Id.  Shannon encouraged Plaintiff to apply for the position.  Plaintiff Aff. at ¶ 10.  On May 22, 2003, the Human Resources Department sent Shannon copies of 203 applications of the qualified applicants, including Plaintiff, for the Administrative Assistant position.  Ex. 15 to Defendant's Motion.  Plaintiff interviewed with Shannon for the position sometime in 2004.  Plaintiff Aff. at ¶ 11; Shannon Dep. at 28.  Based upon what she was told by Shannon and other members of the management team in the Public Works department, Plaintiff believed she would receive the position along with an increase in salary.  Id.

Shannon testified that the interview with Plaintiff went well and he wanted to hire her for the position.  Shannon Dep. at 29.  He testified that he offered her the position with a five percent increase in her salary, but she declined the offer because it was not enough money.  Id. at 30.  However, Plaintiff avers that she was never offered the position.  Plaintiff Aff. at ¶ 12; Plaintiff Dep. at 91.  In addition, Thresla DeWittt, the Assistant Director of Human Resources, testified that the transfer would not have resulted in a five percent increase in salary for Plaintiff because it would have been a lateral transfer from "one 12A to another 12A."  Dewitt Dep. at 27.  Defendant argues in its Reply that Shannon was incorrect in his interpretation of County policy.  Reply at 3.

Plaintiff received a letter on September 29, 2004, informing her that she did not receive the job. Ex. 2 to Plaintiff's Response. Plaintiff testified that after she received the letter, Shannon told her Steven Gosnell would not let him hire her. Plaintiff Dep. at 92-93. Phillip Barnhill testified that Shannon was upset that Gosnell was taking the hiring decision out of his hands. Barnhill Dep. at 17. The Administrative Assistant position was never filled. Shannon Dep. at 18.

**E.     Plaintiff's 2003 EEOC General Intake Questionnaire**

On September 8, 2003, Plaintiff filed with the Equal Employment Opportunity Commission (EEOC) a General Intake Questionnaire, alleging that she had been a victim of third-party sexual harassment. Ex. 3 to Plaintiff's Response. Plaintiff's filing with the EEOC was based on the workplace affair between Steven Gosnell and Vivian Barnhill (now Gosnell), an employee under his supervision at the time the affair began. Plaintiff Aff. at ¶ 8. In the Questionnaire, Plaintiff recounts an event that occurred on July 25, 2003, when a co-worker, Larry Hamilton, asked Plaintiff how she felt about her supervisor, Sandee Garigen, while Garigen was standing behind Plaintiff. Ex. 3 to Plaintiff's Response. Plaintiff did not respond to the question because she turned around to see Garigen running down the hall "to get out of eyesight." Id. Plaintiff stated "I felt I was being set up to be later dismissed under inability to get along with coworker/supervisor." Id. She also stated, "I feel this behavior is an after affect of the Director/Secretary affair. Everyone that has encouraged the relationship has been treated favorably. Everyone that was offended by the relationship has been nit-picked and harassed. The environment has been hostile for over a year." Id.

Plaintiff did not speak with Steven Gosnell or Vivian Barnhill about her concerns regarding their relationship. Plaintiff Dep. at 37. She also did not tell anyone that she had made a filing with the EEOC. Id. at 73. Nevertheless, in a meeting in late September or early October of 2003, Steven

-8-

Gosnell mentioned Plaintiff's claims of third-party sexual harassment to her.  Plaintiff Aff. at ¶ 9;

S. Gosnell Dep. at 78-81.  Patrick Owens, the Human Resources Director, Debbie Bailey, Plaintiff's

Supervisor at the time, and Reverend Singleton of the NAACP were also present at the meeting.  Id.

A formal Charge of Discrimination was never filed regarding Plaintiff's claims of third-party

sexual harassment.  Mark Deladon from the EEOC office spoke to Plaintiff and informed her that

there was "no such thing."  Plaintiff Dep. at 113.

F.    **Plaintiff's 2005 Charge of Discrimination**

On January 25, 2005, Plaintiff filed a Charge of Discrimination with the EEOC, alleging

racial discrimination and retaliation.  Plaintiff received a Notice of Suit Rights on April 29, 2005.

Plaintiff filed the present action on July 22, 2005.

III.    **STANDARD OF REVIEW**

The moving party bears the burden of showing that summary judgment is proper.  Summary

judgment is proper if there is no genuine issue of material fact and the moving party is entitled to

judgment as a matter of law.  Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Summary judgment is proper if the non-moving party fails to establish an essential element of any

cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. 317.

Once the moving party has brought into question whether there is a genuine issue for trial on a

material element of the non-moving party's claims, the non-moving party bears the burden of coming

forward with specific facts which show a genuine issue for trial.  Fed.R.Civ.P. 56(e); Matsushita

Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party

must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could

reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The facts and

inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." See also Celetex Corp. v. Catrett, 477 U.S. 317, 324 (1986)(Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves"). To raise a genuine issue of material fact, a party may not rest upon the mere allegations or denials of his pleadings. Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Celetex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV.    DISCUSSION

### A.    Race Discrimination

#### 1.    Failure to Promote

Under the analysis set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973)[2], the plaintiff has the initial burden of demonstrating a <u>prima facie</u> case of discrimination.  In order to prove a <u>prima facie</u> case of discrimination for failure to promote, a plaintiff must prove that (1) she is a member of a protected group; (2) she applied for the position in question; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination.  <u>Anderson v. Westinghouse Savannah River Company</u>, 406 F.3d 248, 268 (4th Cir. 2005).

Once plaintiff has established a <u>prima facie</u> case, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for the denial of the promotion.  <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 254 ((1981).  This is merely a burden of production, not of persuasion.  <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 506 (1993).

Once the defendant has met its burden of production by producing its legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination <u>vel non</u>." <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 143 (2000)(citing <u>Postal Service Bd. of Governors v. Aikens</u>, 460 U.S. 711, 716 (1983)).  In other words, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by the defendant is not its true

---

    [2] The <u>McDonnell Douglas</u> analysis was refined in <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502 (1993), and <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

reasons, but were pretext for discrimination.  <u>Reeves</u>, 530 U.S. at 143.  During all of the burden

shifting scheme set forth in <u>McDonald Douglas</u>, the ultimate burden of proving that defendant

intentionally discriminated against the plaintiff remains at all times with the plaintiff.  Plaintiff has

the ultimate burden of presenting evidence from which a reasonable jury could conclude defendant

intentionally discriminated against her based on race.

Plaintiff clearly meets the first three elements of a <u>prima facie</u> case of racial discrimination.

As an African American female she is a member of a protected class.  In addition, it is undisputed

that she applied for the Administrative Assistant position in the Public Works Department in May

of 2003.  Finally, Plaintiff's name was included on the list of applicants qualified for the position,

which was forwarded to Billy Shannon, the Director of Public Works.  Shannon testified that he was

interested in hiring Plaintiff for the position, giving rise to an inference that he felt she was qualified

for the position.

Whether Plaintiff meets the fourth element of the <u>prima facie</u> case is not as straightforward.

The parties dispute the reason the position was not filled by Plaintiff.  According to Shannon, he

offered Plaintiff the position along with a five percent increase in salary, but she declined to accept

it because the salary increase was not enough.  Plaintiff denies that the position was ever offered to

her, and points to a letter she received informing her that she was not accepted for the position.  She

also testified that Shannon told her he wanted to hire her, but Steven Gosnell would not let him.

Furthermore, Phillip Barnhill testified that Shannon was upset that Steven Gosnell took the hiring

decision out of Shannon's hands.  Plaintiff also points to Defendant's Answer, in which Defendant

asserts "Mr. Shannon advised the Plaintiff that he had an administrative assistant position open;

however, the position was budgeted and advertised as lower paying than the Plaintiff's current

position. Because of the lower salary the Plaintiff declined consideration for the opening." Answer at ¶ 29.

Plaintiff argues that the inconsistent reasons offered by Defendant for failing to fill the position with Plaintiff give rise to an inference of unlawful discrimination. In its Memorandum in Support of Summary Judgment, Defendant addresses Plaintiff's race discrimination claim by stating only that the "record is wholly devoid of any evidence which would raise any inference of race discrimination. Mrs. Garigen was aware of Plaintiff's race when she interviewed her for the position and subsequently offered her employment. While it is true that the Plaintiff was the only African American employee in her immediate working area there is not a single incident on the record which even Plaintiff attributes to race based discrimination." Defendant's Memorandum at 15. Plaintiff's burden at the prima facie stage is not an arduous one. Thus, the inconsistent reasons offered by Defendant and its employees for the decision not to hire Plaintiff in the Administrative Assistant position, coupled with the first three elements of the prima facie case, are sufficient to give rise to an inference, although quite weak, of unlawful discrimination. Thus, the burden shifts to Defendant to produce a legitimate, non-discriminatory reason for the adverse employment action

At the hearing, counsel for Defendant asserted that Defendant ultimately made a business decision not to fill Administrative Assistant position for which Plaintiff applied. In support of the decision, Defendant notes that the position was open for a significant length of time before the opening was advertised and that over 200 people applied for the position once it was advertised. Defendant argues, had the Public Works Department needed to fill the position, it would have advertised it sooner and could have easily filled it with one of the many applicants. Instead, Defendant determined that it did not need to fill the position. As such, according to Defendant, the

fact that Plaintiff was not given the job is a result of the lack of a need for the position, rather than a reflection in any way on Plaintiff.  Because Defendant's burden of production at this stage in the burden-shifting process is relatively low, Defendant easily meets its burden, which now shifts back to Plaintiff.

Plaintiff must now establish that the legitimate, nondiscriminatory reason offered by Defendant for not offering the Administrative Assistant position to Plaintiff is not its true reason, but is pretext for a discriminatory reason.  It is not necessary to decide "whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination."[3] Hawkins v. Pepsico, 203 F.3d 274, 279 (4thCir. 2000)(quoting and citing DeJarnette v. Corning, Inc., 133 F.3d 293, 299(4th Cir. 1998); DeJarnette, 133 F.3d at 299 ("[T]his Court does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination ...." (internal quotation marks omitted)); Henson v. Liggett Group, Inc., 61 F.3d 270, 277 (4th Cir.1995) ("We have recognized the importance of giving an employer the latitude and autonomy to make business decisions, including workplace reorganization, as long as the employer does not violate the ADEA."); Jiminez v. Mary Washington College, 57 F.3d 369, 377 (4th Cir.1995) ("Title VII is not a vehicle for substituting the judgment of a court for that of the employer").  It is the perception of the employer that is critical.  Hawkins, 203 F.3d at 280. Even a reasoned decision based on incorrect facts is not evidence of pretext.  Pollard v. Rea Magnet Wire Co., 824 F.3d 557, 559 (7th Cir. 1987), cert. denied, 484 U.S. 977 (1987).

---

[3] "Proof that the employer's proffered reasons are unpersuasive, or even obviously contrived, . . . does not necessarily establish that [plaintiff's] proffered reason (race discrimination) . . . is correct." Reeves, 530 U.S. at 146-47.  "It is not enough to disbelieve the [employer]." Love-Lane v. Martin, 355 F.3d 766, 788 (4th Cir. 2004).  Plaintiff must show a reasonable jury could "believe [her] explanation of intentional race discrimination." Id.

Viewing the facts in the light most favorable to Plaintiff, Billy Shannon wanted to offer the job to Plaintiff, but Steven Gosnell intervened and would not allow Shannon to hire her. Even if Gosnell's intervention into the hiring process was unfair, Plaintiff offers no evidence that Gosnell was motivated by any racial animus toward Plaintiff nor has she offered any evidence that Gosnell has ever held any racial animus towards Plaintiff in the past. The facts offered by Plaintiff fail to create a genuine issue of material fact as to whether Plaintiff was rejected for the Administrative Assistant position for a discriminatory reason based on race. Thus, Plaintiff fails to meet her burden of establishing discrimination vel non, and summary judgment is appropriate on her discriminatory failure to promote claim.

### 2. Disparate Treatment

In addition to her claim that she was not promoted as a result of her race, Plaintiff also alleges that she has been singled out, harassed, and treated differently from her white coworkers as a result of her race. According to Plaintiff, she was treated differently than her white coworkers on several occasions, including the disciplinary actions taken against her on May 21, 2002, September 10, 2003, and May 27, 2004. On May 21, 2002, Plaintiff received a written warning in connection with the envelope-stuffing task. Her white coworkers who also participated in the task received no discipline. On September 10, 2003, Plaintiff received a written reprimand regarding her tone of voice when on the phone. On May 27, 2004, Plaintiff received a written warning for arguing with another coworker. The white coworker with whom she was accused of arguing received no discipline.

Plaintiff has the burden of establishing a prima facie case of disparate treatment by showing (1) she is a member of a protected class, (2) she was qualified for her job and her performance was satisfactory, (3) despite her qualifications she suffered an adverse employment action, and (4) other

employees outside the protected class were treated more favorably. Love-Lane v. Martin, 355 F.3d 766, 787 (4th Cir.2004).

As stated above, Plaintiff is a member of a protected class.  However, even assuming Plaintiff was qualified for her job and generally performed at a satisfactory level, Plaintiff still fails to meet her burden because the disciplinary warnings/reprimands she received do not rise to the level of adverse employment actions.  "An adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment." James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375-76 (4th Cir.2004). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); see also Brockman v. Snow, 2007 WL 493926, *2 (4th Cir. Feb.13, 2007) (unpublished) ("The standard for an adverse employment action in a disparate treatment case is different than in a retaliation case: in a discrimination case, our precedent mandates that the plaintiff has the higher burden of showing an 'ultimate employment' action that affects 'hiring, granting leave, discharging, promoting, and compensating.'").  Plaintiff has failed to produce sufficient evidence to establish that the warnings/reprimands she received affected the terms, benefits, or conditions of her employment. See Lewis v. Forest Pharmaceuticals, Inc., 217 F.Supp.2d 638, 648 (D.Md.2002) ("Reprimands, whether oral or written, do not per se significantly affect the terms or conditions of employment.") (citing Nye v. Roberts, 159 F.Supp.2d 207, 213 (D.Md.2001)); Naughton v. Sears, Roebuck & Co., No. 02-4761, 2003 WL 360085 at *5 n. 1 (N.D.Ill.2003) (criticism, including a negative performance review or development plan, does not constitute an adverse employment action).  Thus, Plaintiff's

-16-

claims of disparate treatment must fail.

### B.    Retaliation

Plaintiff further alleges that the denial of her application for the Administrative Assistant position in the Public Works Department and the disparate treatment she received were also in retaliation for the General Intake Questionnaire she filed with the EEOC on September 8, 2003 regarding third-party sexual harassment.  Title 42, Section 2000e-3(a) of the United States Code provides, in relevant part, as follows:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

To establish a prima facie case of retaliation, a plaintiff must show (1) she engaged in protected activity, (2) the employer took adverse employment action against her, and (3) a causal connection existed between the protected activity and the adverse action.  Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985).

A plaintiff may engage in protected activity under either the "opposition" clause or the "participation" clause of § 2000e-3.  "To qualify as opposition activity an employee need not engage in the formal process of adjudicating a discrimination claim."  Laughlin v. Metropolitan Washington Airports Authority, 149 F.3d 253, 259 (4th Cir. 1998) (citing Armstrong v. Index Journal Co., 647 F.2d 441, 448 (4th Cir.1981)).   However, a plaintiff must show she opposed an unlawful employment practice which she reasonably believed had occurred or was occurring.  Bigge v. Albertsons, Inc., 894 F.2d 1497, 1503 (11th Cir.1990); see also Ross, 759 F.2d at 355 n. 1 (stating that a Title VII oppositional retaliation claimant need not show that the underlying claim of sexual

-17-

harassment was in fact meritorious in order to prevail). "The inquiry is therefore (1) whether [plaintiff] 'subjectively (that is, in good faith) believed' that the [defendant] had engaged in [an illegal practice], and (2) whether this belief 'was objectively reasonable in light of the facts,' a standard which we will refer to as one of 'reasonable belief.'" Peters v. Jenney, 327 F.3d 307 (4th Cir. 2003)(citing Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1312 (11th Cir.2002)); Jordan v. Alternative Resources Corp., 458 F.3d 332, 338-40 (4th Cir. 2006). This case does not involve protected activity under the opposition clause because there was no objectively reasonable belief that a violation of Title VII had occurred (i.e., "third party discrimination").

However, the filing of the General Intake Questionnaire does qualify as protected activity under the participation clause. See 42 U.S.C. § 2000e-3. Additionally, it qualifies as protected activity because there is no "reasonable belief" requirement under the participation clause. Laughlin, 149 F.3d at 259 n.4.

The Supreme Court recently clarified that a different and less strenuous standard is used to define adverse employment actions in the retaliation context as opposed to other Title VII contexts: "[T]he anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." Burlington Northern & Santa Fe Rwy. v. White, 26 S.Ct. 2405, 2412-13 (2006). However, the anti-retaliation provision "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Id. at 2414 (emphasis added). Thus, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 2415 (quotation marks and citations omitted).

Even under the less stringent standard set forth in <u>Burlington Northern</u>, Plaintiff's disciplinary warnings[4] still do not rise to the level of materially adverse employment actions. <u>See</u> <u>Parsons v. Wynne</u>, 221 Fed. Appx. 197, 199, 2007 WL 731398, *1 (4th Cir.2007) (unpublished) (adverse performance evaluation and change in work schedule not materially adverse actions); <u>Washington v. Norton</u>, 2007 WL 1417290, *4 (N.D.W.Va.2007) ("Reprimanding an employee for unprofessional conduct or warning an employee about poor performance by letter ... would not dissuade a worker from filing protected complaints"); <u>Gordon v. Gutierrez</u>, 2007 WL 30324, *9 (E.D.Va.2007) ("circumstances of verbal counseling ... would not discourage a reasonable employee"); and <u>Zackrie v. Lockheed Martin, Corp.</u>, 2006 WL 2849767, *8 (D.Md.2006) (documenting areas for improvement and tracking absences insufficient).

However, the denial of her application for the position in the Public Works department, if that position would have been accompanied by a raise in Plaintiff's salary, qualifies as a materially adverse employment action. Because a question of fact exists as to whether the position would have included a raise, at this stage in the litigation, the question must be resolved in Plaintiff's favor. As such, the undersigned finds that Plaintiff suffered a materially adverse employment action when her application for the position in the Public Works Department was denied. The analysis of Plaintiff's <u>prima</u> <u>facie</u> case of retaliation moves forward only with regards to that issue.

Defendant argues that Plaintiff cannot meet the <u>prima</u> <u>facie</u> case of retaliation because she cannot establish a causal connection between her filing of the General Intake Questionnaire and the adverse employment action. According to Defendant, Plaintiff has not shown that any of her

---

[4]Plaintiff's disciplinary warning of May 21, 2002, is necessarily excluded from the retaliation claim because it occurred before Plaintiff's filing of the General Intake Questionnaire on September 8, 2003.

supervisors were aware of her filing.  See Causey v. Balog, 162 F.3d 795, 803 (4th Cir.1998)("Knowledge of a charge [of discrimination] is essential to a retaliation claim.").  Plaintiff testified that she did not tell anyone of her filing with the EEOC.  Plaintiff Dep. at 73.  Nevertheless, the record shows that Steven Gosnell mentioned Plaintiff's claims of third-party sexual harassment to her in a meeting in late September or early October of 2003.  Plaintiff Aff. at ¶ 9; S. Gosnell Dep. at 78-81.  Patrick Owens, the Human Resources Director, Debbie Bailey, Plaintiff's Supervisor at the time, and Reverend Singleton of the NAACP were also present at the meeting.  Id.

In its Reply (Document # 44), Defendant argues: "[t]he Defendant acknowledges that Mr. Gosnell used the phrase 'third party discrimination' during the taped meeting in October of 2003; however, one cannot reasonably infer from his mere utterance of three words that he was aware that the Plaintiff was communicating with the EEOC."  Reply at 3.

During his deposition, in response to the question "and we now know that whether the meeting happened in September, 2003, or October, 2003, at that point, you were advised or you had learned in some form or fashion that [Plaintiff] was making an allegation of third party discrimination," Steven Gosnell answered, "I know that there was an issue, what the allegations were, I know there was something about third party discrimination, based now on what the tape [of the meeting] said."  S. Gosnell Dep. at 80-81.  Thus, Steven Gosnell was at least aware that Plaintiff had raised allegations of third party discrimination.[5]

_____

[5] Plaintiff presents the testimony of Danny Knight, the Horry County Administrator, to show Gosnell's knowledge of Plaintiff's EEOC filing.  However, a review of the testimony reveals that Knight was referring to the formal Charge of Discrimination filed by Plaintiff in 2005 and not the General Intake Questionnaire filed in 2003.  See Knight Dep. at 9, 25.

While the evidence establishes that Gosnell knew that Plaintiff voiced complaints about "third party discrimination," it is not reasonable to infer that he knew she completed a General Intake Questionnaire and filed it with the EEOC. As set forth above, because her complaints only qualify as protected activity under the participation clause, it is necessary that he knew of the participation activity, that is, the EEOC filing. Therefore, Plaintiff fails to meet her burden of presenting evidence of a causal connection between her filing the General Intake Questionnaire and the adverse employment action,[6] and thus fails to establish a <u>prima facie</u> case of retaliation.

Assuming, for the purpose of discussion, a <u>prima facie</u> case of retaliation, the burden shifts to Defendant to produce a legitimate, non-retaliatory reason for the adverse employment action. As noted previously, Defendant asserts that it made a business decision not to fill the Administrative Assistant position for which Plaintiff applied. This is sufficient to satisfy its burden of production, and the burden shifts back to Plaintiff to produce evidence that Defendant's reason is not its true reason, but is pretext for a retaliatory reason.

Plaintiff testified that Gosnell treated well those who approved of his relationship with Ms. Barnhill and harassed those who disapproved of the relationship. Also, as stated above, Plaintiff

---

[6]Defendant also argues that Plaintiff has not established a causal connection between her 2003 EEOC filing and the adverse employment action because more than a year passed between the two events. The Fourth Circuit has stated that "very little evidence of a causal connection is required to establish a <u>prima facie</u> case" and "merely the closeness in time between the filing of a discrimination charge and an employer's firing an employee is sufficient" to satisfy the causation element of a <u>prima facie</u> retaliation case. <u>Tinsley v. First Union Nat. Bank</u>, 155 F.3d 435, 443 (4th Cir.1998). This, of course, is not to say that the converse is true, that is, a causal connection is necessarily destroyed merely because the timing between the two events is not close. <u>See</u> <u>Causey v. Balog</u>, 162 F.3d 795, 803 (4th Cir.1998) (holding that without temporal proximity, the plaintiff must produce some "other evidence" establishing causation). The job opening occurred prior to Plaintiff voicing her complaint and the interview; the interference by Gosnell and ultimate denial of the position occurred after Plaintiff voiced her complaint. Based on the record presented, lack of temporal proximity does not defeat causation as a matter of law.

fails to show Gosnell knew of the 2003 EEOC filing.  It is Plaintiff's burden ultimately to show that

retaliation for the filing with the EEOC was <u>the</u> motivating factor in denying her the position.  It is

not necessary to decide "whether the reason was wise, fair, or even correct, ultimately, so long as it

truly was the reason for the plaintiff's termination."[7]  <u>Hawkins v. Pepsico</u>, 203 F.3d 274, 279 (4thCir.

2000)(quoting and citing <u>DeJarnette v. Corning, Inc.</u>, 133 F.3d 293, 299(4th Cir. 1998); <u>DeJarnette</u>,

133 F.3d at 299 ("[T]his Court does not sit as a kind of super-personnel department weighing the

prudence of employment decisions made by firms charged with employment discrimination ...."

(internal quotation marks omitted)); <u>Henson v. Liggett Group, Inc.</u>, 61 F.3d 270, 277 (4th Cir.1995)

("We have recognized the importance of giving an employer the latitude and autonomy to make

business decisions, including workplace reorganization, as long as the employer does not violate the

ADEA."); <u>Jiminez v. Mary Washington College</u>, 57 F.3d 369, 377 (4th Cir.1995) ("Title VII is not

a vehicle for substituting the judgment of a court for that of the employer").  Plaintiff fails to present

evidence from which a reasonable juror could conclude <u>the</u> motivating factor for retaliation was the

filing with the EEOC.  Thus, her retaliation claim fails.

### C.    Hostile Work Environment

Plaintiff also includes a claim for hostile work environment in her complaint.  To establish

a hostile work environment claim, Plaintiff must present evidence to prove the following elements:

1) he was subjected to unwelcome conduct in a work related setting; 2) the conduct complained of

was based on his race; 3) the conduct was sufficiently severe or pervasive to alter his conditions of

---

[7] "Proof that the employer's proffered reasons are unpersuasive, or even obviously contrived, . . . does not necessarily establish that [plaintiff's] proffered reason (race discrimination) . . . is correct."  <u>Reeves</u>, 530 U.S. at 146-47.  "It is not enough to disbelieve the [employer]."  <u>Love-Lane v. Martin</u>, 355 F.3d 766, 788 (4th Cir. 2004).  Plaintiff must show a reasonable jury could "believe [her] explanation of intentional race discrimination."  <u>Id</u>.

employment and to create an abusive work environment; and 4) the conduct is imputable on some factual basis to his employer. Ocheltree v. Scollon Productions, Inc., 308 F.3d 351, 356 (4th Cir.2002); Spicer v. Com.of Va. Dep't of Corrections, 66 F.3d 705, 710 (4th Cir.1995); Brown v. Perry, 184 F.3d 388, 393 (4th Cir.1999).

To qualify as severe and pervasive for purposes of Title VII, the harassment must be objectively and subjectively severe or pervasive as to alter the conditions of plaintiff's employment and render the workplace abusive. Faragher , 524 U.S. at 786; Hartsell v. Duplex Products, 123 F.3d 766, 773 (4th Cir. 1997). The Fourth Circuit has utilized a four factor approach to evaluate the totality of the circumstances in determining whether conduct is severe or pervasive: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it was physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interfered with plaintiff's work performance. Connor v. Schrader Bridgeport Int'l, Inc., 227 F.3d 179, 193 (4th Cir. 2000). Plaintiff has failed to produce sufficient evidence that the alleged harassment was sufficiently severe or pervasive to alter the conditions of her employment. Accordingly, summary judgment is proper on this claim.

## V.    CONCLUSION

In light of the above analysis, it is recommended that Defendant's Motion for Summary Judgment (Document # 36) be granted.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

January 16, 2008
Florence, South Carolina

**The parties' attention is directed to the important notice contained of the following page.**

-23-